UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.                                    Case Nos.:    5:12cr5/MW/CJK
                                                    5:15cv52/MW/CJK

WILLIE JAMES MORGAN
_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 737) and the Government's response thereto.    (ECF No. 802).    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.    *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).    After a review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and the § 2255 motion should be denied.    *See* Rules 8(a) and (b), Rules Governing § 2255 Cases.

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

PROCEDURAL BACKGROUND

Defendant Willie James Morgan was charged in two counts of a fifteen-count second superseding indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine ("Count One"); and possession of a firearm by a convicted felon ("Count Fourteen").    (ECF No. 160).    The case involved a conspiracy engaged in acquisition, transportation and distribution of multi-kilogram quantities of cocaine in the Bay County, Florida area.    (ECF No. 473).    Defendant Morgan was a distributor for the organization, which was headed by Freddie Lee Christopher Knowles, IV, a co-defendant in the case.    (*See* ECF No. 473, PSR ¶¶ 50, 92-94).

On May 17, 2012, the Government filed a notice of enhancement information indicating its intent to seek enhanced penalties due to Defendant's prior felony drug convictions.    (ECF No. 182).    The notice framed Defendant's sentencing exposure as to "increased maximum penalties for Count One: [of]. . . twenty (20) years to life imprisonment."    (ECF No. 182 at 2).    Although arguably implied, the notice did not specify the lower end of these ranges were statutory mandatory minimums.

Of the twelve defendants, only Defendant Morgan and Christopher Mathis elected to go to trial.   Trial began on September 17, 2012, and the jury returned a guilty verdict on September 20, 2012.   (ECF Nos. 382, 518, 520-522).   The jury specifically found Defendant's conduct as charged in Count One involved five kilograms or more of cocaine.   (ECF No. 382 at 2).

The Presentence Investigation Report ("PSR") assessed a base offense level of 34 and added a two-level adjustment for Defendant's possession of multiple firearms.   (ECF No. 473, PSR ¶¶ 102, 103).   Defendant was a career offender and his offense level became 37 after the application of the Chapter Four Enhancement. (PSR ¶ 108).   There were no other adjustments, and his total offense level was 37. (PSR ¶ 110).   Although Defendant had only 9 criminal history points, as a result of his career offender status his criminal history category was VI.   (PSR ¶¶ 134-136). The applicable advisory guidelines range on Count One was 360 months to life. (PSR ¶ 172).   Defendant's sentence on Count Fourteen was limited by the statutory maximum of 10 years.   (PSR ¶ 171).

At sentencing, Defendant's attorney Paul Villeneuve reported Defendant had twice refused to meet with him to discuss the PSR.   (ECF No. 555 at 3-4). Counsel advised that after the second refusal he sent Defendant a letter with a copy

of the PSR, but the two men had never discussed it.   Counsel also noted he had thoroughly reviewed the report and found nothing objectionable therein.

In response to the court's inquiry, Defendant explained he had wanted to fire his attorney previously because he believed counsel had lied to Defendant and his family.   (ECF No. 555 at 4-5).   Defendant acknowledged he had received and looked over the PSR.   (ECF No. 555 at 5).   Morgan said there was nothing in the report he wanted to bring to the court's attention, although he allowed that he "really didn't understand it."   (*Id.*).   The Government requested that the court clarify Defendant's comments.   Defendant's subsequent comments appeared, in the view of the Assistant United States Attorney, to be objections to the offense conduct and to the additional drug amounts attributed to him for guidelines purposes.   (ECF No. 555 at 6)   The court recessed the proceedings to allow Defendant the opportunity to talk to his attorney.   Mr. Villaneuve advised the court he and his client had discussed the related conduct and the prior offenses that supported the career offender adjustment, and there were no objections.   (ECF No. 555 at 8).

Defendant addressed the court, stating he "didn't understand the charge." (ECF No. 555 at 9).   He said if there would have been a "lesser charge" he would have "copped out" and taken his time, but he didn't know "nothing" about five

kilograms.    Defendant also said he had been to prison twice and would have pleaded guilty and accepted his sentence, but he did not understand the charge.

Defendant's lawyer spoke on his behalf and urged the court to use its discretion, disregard the career offender status, and instead impose the statutory minimum mandatory of twenty years.    (ECF No. 555 at 10-12).    After Defendant admitted his three prior convictions, the Government argued, in turn, that a sentence within the applicable guidelines range was appropriate.    (ECF No. 555 at 12-14). The court imposed a 360-month sentence, at the bottom of the applicable guidelines range.    (ECF No. 555 at 15; ECF Nos. 485, 486).

On appeal, Defendant argued the district court should have questioned and replaced a juror who allegedly slept during the first day of trial and counsel was ineffective for failing to object to the juror's inattentiveness.    (ECF No. 654).    The court declined to review the ineffective assistance of counsel argument, and concluded, under the totality of the circumstances, the district court did not err in failing to question and replace the juror.

Defense counsel had, according to the positon Defendant took on appeal, observed the juror sleeping during *voir dire* but decided to keep him because he was one of the only men on the panel and the only African-American.    Defendant also

argued the court learned the same juror might have neglected to respond to a question during *voir dire*.   The prosecutor suggested the juror's behavior might need to be addressed, but the district court decided against questioning the juror about sleeping. Neither defense lawyer objected.   In light of this, the Eleventh Circuit, reviewing for plain error, found no error, but advised that Mathis and Morgan could raise their ineffective assistance of counsel arguments in a postconviction motion. (ECF No. 654 at 4).

Defendant filed the instant 2255 motion in March 2015, raising multiple claims of ineffective assistance of counsel.   (ECF No. 737).   The Government responded in opposition in July 2015.   (ECF No. 802).   In September, Defendant moved for an extension of time to file a reply, and the court granted the extension until October 5, 2015.[1]   (ECF Nos. 816, 817).   The court received nothing further from Defendant until June 2016 when he sent a letter requesting an update as to his request for extension of time, and advising as to his new address.   (ECF No. 854). Due to the passage of time, the court declined to permit Morgan to file a reply, although he had not specifically requested leave to do so.   (ECF No. 855).

---

[1]  The court granted the extension via an electronic docket entry, a copy of which is routinely mailed to any *pro se* litigants.

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

In August 2016 Defendant moved for leave to file a "supplemental § 2255 motion" based on Amendment 794.   (ECF No. 869).   The court denied the motion after response from the Government.   (ECF Nos. 872, 875, 877).

## ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

it must be shown the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal.   *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255.   *See Nyhuis*, 211 F.3d at 1343.   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *See Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under § 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred.   *See Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay*, 657 F.3d

at 1195.    An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mills*, 36 F.3d at 1055).    Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).    To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    In order to prevail on

a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

   In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."    *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009)

(*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315-16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing petitioner was "not entitled to error-free representation").    Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.    *See Strickland*, 466 U.S. at 689.    To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."    *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.    "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."    *Chandler*, 218 F.3d at 1314. When reviewing the performance of experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."    *Id.* at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.    *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112

(2011) (*quoting Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart*, 506 U.S. at 369 (*quoting Strickland*, 466 U.S. at 687).    Or in the case of claimed sentencing errors, a defendant must demonstrate there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.    *See Glover v. United States*, 531 U.S. 198, 203-04 (2001).    A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."    *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.    *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala.*

*Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.    *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (*citing Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008)). This is true regardless of whether the issue is a trial or sentencing issue.    *See, e.g.*, *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster*, 880

F.2d at 375 (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313.    This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.    *See Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Regardless of how the standard is framed, under the prevailing case law it is abundantly clear a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.    *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported

generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing. The record in this case is complete, and Defendant has not shown an evidentiary hearing is necessary for the court to conduct a merits review of his claims.

<u>Defendant's Claims for Relief</u>

Defendant's single claim of ineffective assistance of counsel contains multiple subparts.   Some of the subparts have overlapping components, but the court will address each claim in turn.

1.   <u>Counsel failed to investigate and to interview and call witnesses</u>

The first group of errors identified in Defendant's ineffective assistance of counsel claim suggests counsel failed to investigate, call witnesses favorable to the defense, and interview witnesses.

First, Defendant does not explain what counsel should have investigated, nor what "favorable witnesses" should have been called.   Counsel need not always investigate before pursuing a particular line of defense.   *See Chandler*, 218 F.3d at 1318; *Strickland*, 466 U.S. 690-91 ("[S]trategic choices made after less than

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *id.* ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").    Because Defendant's claim lacks specificity with respect to either the investigation counsel should have performed or how such an investigation would have altered the outcome of the case, it must fail.

Defendant's claim regarding purported witnesses counsel failed to interview or present similarly falls short.    Other than a reference to Freddie Knowles in his memorandum, Defendant does not identify any such witnesses or explain the substance of any purportedly favorable testimony that could have been presented. Trial counsel cannot be faulted for failing to call witnesses whose names are not disclosed by the Defendant.    *See Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1307 (11th Cir. 2005) (*citing Jones v. State*, 528 So. 2d 1171, 1173 (Fla. 1988) and *Highsmith v. State*, 617 So. 2d 825, 826 (Fla. 1st DCA 1993)).    Furthermore, a defendant's burden of showing prejudice is heavy where he alleges ineffective assistance in failing to call a witness because "often allegations of what a witness would have testified to are largely speculative."    *Sullivan v. DeLoach*, 459 F.3d

1097, 1109 (11th Cir. 2006) (*quoting United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)).

Defendant's vague assertion that counsel failed to investigate the intentions and testimony of Freddie Knowles (ECF No. 737 at 17), who testified as a Government witness, establishes neither deficient performance nor prejudice. Counsel cross examined Mr. Knowles thoroughly about key issues including his credibility, his cooperation with law enforcement and motivation for testifying, and the ownership of evidence.   (ECF No. 520 at 366-384).   For instance, counsel brought out that, despite Knowles' tattoos, which said "Stop Snitching" and "Death Before Dishonor," Knowles had repeatedly met with law enforcement in an attempt to cooperate.   (ECF No. 520 at 372).   Counsel also impeached the witness's statement that he had never lied to law enforcement.   (ECF No. 520 at 375-376). Defendant has not suggested, nor can the undersigned infer, what information counsel could have gleaned from an investigation of Mr. Knowles that could have changed the outcome of the proceedings.    No relief is warranted on this claim.

    2.   Counsel misinformed Defendant regarding drug quantity exposure

    Defendant asserts he would have pleaded guilty had he known he faced exposure to 12.8 kilograms of "ghost dope."   Defendant claims he did not know the

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

"true nature" of the charges because he did not know the Government intended to introduce evidence of drugs in excess of five kilograms.    He further says counsel's failure to advise that such testimony would be forthcoming resulted in him facing "the perils of a jury trial while being misinformed to the true nature of the charges." (ECF No. 737 at 17).

   *Strickland's* two-part test, requiring a showing of deficient performance and prejudice, also applies to guilty pleas.    *See Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (*citing Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).    A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.    *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (*quoting Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015). The Sixth Amendment right to the effective assistance of counsel also extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected."    *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (*citing Missouri v. Frye*, 566 U.S. 133, 138-145 (2012) and *Lafler*, 566 U.S. at 163).    A defendant who claims ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea, and the conviction or sentence or both under the terms of the

plea offer would have been less severe than under the judgment and sentence imposed. *See Lafler*, 566 U.S. at 164.    A defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal.    *See Osley v. United States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014).

The court is well aware of the policy of the Office of the United States Attorney for the Northern District of Florida which, in virtually every instance, precludes plea "bargaining."    Most often, a defendant seeking an agreement with the Government and the possibility of earning a substantial assistance motion must plead to the charges as set forth in the indictment.    The benefit in pleading guilty comes from the acceptance of responsibility and the possibility of cooperating with the Government, not from a "reduction" in the charges.

Defendant stated at sentencing he would have pleaded guilty "[i]f there would have been a lesser charge or something," and he denied knowledge of five kilograms of cocaine.    (ECF No. 555 at 9).    Nothing suggests, however, a plea to anything less than the five kilograms or more as charged in the indictment ever became available.    Furthermore, Defendant's statement at sentencing suggests he would

not have pleaded guilty to the indictment as charged because he did not "know nothing about [five kilograms]."

Even if Defendant had entered a plea as charged, the relevant conduct of which he now complains could still have been considered by the court at sentencing. *See* U.S.S.G. § 1B1.3; *United States v. Siegelman,* 786 F.3d 1322, 1332 (11th Cir. 2015).   Perhaps more significantly, the quantity of cocaine attributed to Defendant did not control the sentence.   The Chapter Four enhancement, and not § 2D1.1, determined the guidelines calculations.   (ECF No. 473, PSR ¶¶ 102-110).

In sum, Defendant has not established counsel's performance was constitutionally deficient under *Strickland*. This ground has no merit.

### 3.   Counsel advised Defendant to sign a confession under duress

Defendant's claim that counsel advised him to sign a confession under duress neglects to advance any factual basis.   Nor does the record evidence any sort of "confession" such as suggested by Defendant.   He is not entitled to relief on this claim.

### 4.   Counsel failed to object to "relevant conduct"

Defendant's assertion that counsel failed to object to the relevant conduct attributed to him in the PSR does not establish a violation of *Strickland*.

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

Sentencing courts must consider all relevant conduct, as defined in § 1B1.3, when calculating a defendant's guidelines range.   *See Siegelman*, 786 F.3d at 1332. Even had a viable basis for such an objection been shown, as noted above, the Chapter Four enhancement trumped the calculations under Chapters Two and Three. Defendant is not entitled to relief.

     5.   Counsel failed to object to career offender designation

Defendant's guidelines level was enhanced due to his classification as a career offender.   Defendant now asserts counsel was constitutionally ineffective because he did not object to the application of this enhancement.

The Sentencing Guidelines provide the career offender designation will apply where the defendant was at least 18 years old at the time of the offense of conviction, the instant conviction is either a felony crime of violence or controlled substance offense, and the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense.   *See* U.S.S.G. § 4B1.1.   Defendant's PSR did not specifically identify the offenses used to support the career offender enhancement.   (ECF No. 473, No. 108).   Defendant, did, however, have several prior drug convictions involving cocaine. He had been convicted of sale of cocaine (selling crack to an undercover informant) and possession of a controlled substance

(15 rocks of crack cocaine) with intent to sell.    (ECF No. 473, PSR ¶¶ 116, 117). A third conviction, for possession of cocaine, appeared to be personal use cocaine based on the offense description, and a fourth conviction was also charged as possession of cocaine, although law enforcement had observed Defendant selling crack cocaine to another individual.    (ECF No. 473, PSR ¶¶ 120, 121).

Convictions under Florida law for sale of cocaine are felony controlled substance offenses; no *mens rea* requirement applies with respect to the identity of the controlled substances.    *See United States v. Smith*, 775 F.3d 1262, 1267-68 (11th Cir. 2014); *United States v. Darling*, 619 F. App'x 877 (11th Cir. 2015). Defendant's prior drug convictions, admitted at sentencing (ECF No. 555 at 12-13), supported the application of the career offender adjustment, and no basis existed for counsel to object.

Defendant also asserts entitlement to relief under *United States v. Descamps*, 133 S. Ct. 2276 (2013).    *Descamps* was decided after Defendant was sentenced but before his appeal.    Thus, Defendant could have brought a claim based on *Descamps* on direct appeal.    Having failed to do so, the claim is procedurally barred.

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

A liberal construction of Defendant's argument would suggest counsel was ineffective for failing to raise a *Descamps* claim on appeal.    Such an interpretation would defeat the procedural bar, but still would not afford Defendant relief.

In *Descamps*, the Supreme Court reviewed the process for determining whether a defendant's prior conviction qualified as a violent felony for purposes of applying a sentence enhancement under the Armed Career Criminal Act.    The case applied prior precedent and reaffirmed that lower courts may not use the "modified categorical approach" to determine whether convictions under "indivisible" statutes are predicate violent felonies under the ACCA.    *Descamps*, 133 S. Ct. at 2281-85. Defendant's career offender status was not based on crimes of violence, but rather felony drug convictions.    The *Descamps* decision did not affect the district court's determination that Defendant was properly classified as a career offender based on his prior felony drug convictions.    Counsel was not constitutionally ineffective for his failure to pursue this meritless issue on appeal.    *See Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013).

In his memorandum, Defendant complains counsel did not investigate or raise an equal protection claim as it relates to the career offender designation. Defendant's assertion that such a claim would have been successful fails under

binding circuit precedent.    The Eleventh Circuit has previously held that use of a defendant's criminal history to determine an appropriate sentence violates neither due process nor equal protection.    *See United States v. Johns*, 984 F.2d 1162, 1164 (11th Cir. 1993).    The Government has a legitimate interest in "prevent[ing] repeat offenders from continuing to victimize society."    *United States v. Crews*, 495 F. App'x 36, 38 (11th Cir. 2012) (*quoting Johns*, 984 F.2d at 1164).    Therefore, counsel did not perform deficiently by choosing not to raise a meritless claim.

6.  Counsel failed to object to "anything" in the PSR

Defendant faults counsel for failing to file any objections to the PSR, specifically contending that counsel should have objected to the "drug amounts" reported.    As noted above, the career offender enhancement, rather than the drug quantities, directed the guidelines calculations.    Defendant is not entitled to relief.

7.  Counsel failed to object to the variance between the indictment and the proof at trial

Defendant asserts counsel was ineffective because he did not object to a "variance" between the indictment and the proof at trial.    This claim may rest upon a misreading of the indictment.

"A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment."    *United States v. Lander*, 668 F.3d

1289, 1295 (11th Cir. 2012) (internal quotations and citations omitted).    The second superseding indictment alleged the conduct in Count One involved "five (5) kilograms *or more* of a mixture and substance containing a detectable amount of cocaine."    (ECF No. 160 at 2 (emphasis added)). Introduction of evidence consistent with this amount, although not including an upper limit, was not a variance.    According to the PSR, Defendant had accountability for 17.8 kilograms of cocaine.    (ECF No. 473).    Counsel was not constitutionally ineffective for failing to object.

    8.   Counsel failed to object to Juror Number 10

Defendant asserts counsel was constitutionally ineffective for failing to lodge two separate objections to Juror Number 10.    First, he complains counsel failed to object when the juror who was seemingly sleeping or inattentive during the proceedings, participated in rendering the verdict.    Next, he contends counsel should have objected due to the juror's prior family friendship with a potential witness at trial.    Defendant posits that the juror "[could] have been swayed into accepting any and all events or circumstances that he personally believed would benefit his son's friend."    (ECF No. 737 at 16).

During jury selection, the court granted five challenges for cause.    (ECF No. 597 at 49).    As the attorneys were deciding how to exercise peremptory challenges, defense counsel made limited mention of ultimate Juror Number 10, who appeared to doze off during the proceedings.

> MR. VILLENEUVE:     My pause – this is not a cause, I just kept noticed he kept dozing off in jury selection.    I'm just wondering whether I want him or not.

> MS. RISINGER:    The one with the white hair and glasses?

> MR VILLENEUVE:    Did you see the same thing?

> MS. RISINGER:    Uh-uh

> MR VILLENEUVE:    Five.    This would be Number 5.

> MR. GREENBERG:    This would be five.

> MR. VILLENEUVE:    Is he the only guy we have so far?

> MR. GREENBERG:    We have at least one other male.

> MR. VILLENEUVE:    You're right, [name redacted].

> MR. GREENBERG:    I'll do what you want.

> MR. VILLENEUVE:    I think we ought to keep him.    Accept, Your Honor.

> MS. RISINGER:    Accept, Your Honor.

> THE COURT:    Okay.    That will be Number 10.

(ECF No. 597 at 53-54).    Juror Number 10 became part of the petit jury.

Near the close of the first day of trial, it came to the court's attention—via a third party's report to a U.S. Marshal—that the same juror's sixteen-year-old son was "best friends" with a potential witness named Porter.    (ECF No. 518 at 125-26).    The Government had read the jury a list of potential witnesses during *voir dire* and asked whether any of the venire knew or thought they might have known any of the witnesses.    (ECF No. 597 at 4).    Ms. Risinger's list included Michael Vernon Porter's name, as well as his street name, Nick Fred, but Juror Number 10 did not speak up.    When the court asked, in a conference with counsel, if anyone had concerns, the Government responded affirmatively and asked that the juror be subjected to additional questioning outside the presence of the rest of the jury. (ECF No. 518 at 127).    Mr. Greenberg, counsel for co-defendant Mathis, also expressed concern.    Mr. Greenberg said he had not made any kind of motion, partly due to the presence of only three African-Americans out of 56 prospective jurors, and the juror in question was the lone African-American selected for the jury. (ECF No. 518 at 127).    The court agreed to ask the juror whether he knew his son was friends with the possible witness.    The Government asked the court to also ask

the juror why he had not spoken up earlier.    The following exchange took place

between court and counsel:

> THE COURT:    He may well have been nodding off, because we've
> established that.
>
> MR. VILLENEUVE:    He's made a habit.
>
> MS. RISINGER:    That is a concern too.    I think we – and I don't know
> about Mr. Villeneuve's statement, it seems that we might need to address as
> well, but he does quite often appear to close his eyes.    And whether he is
> actually nodding off or not –
>
> MR. GREENBERG:    Maybe he's concentrating.
>
> MS. RISINGER:    He could be.    Or whether he is sleeping, I think that's
> something else that possibly needs to be addressed with this juror.
>
> THE COURT:    Well, keep in mind, we also don't want to get wrapped
> around the law of unintended consequences with [Juror Number 10].
>
> MS. RISINGER:    Agreed.
>
> THE COURT:    You know, I don't know who will be hurt the most if he
> becomes offended and hostile.
>
> MR. VILLENEUVE:    Along those lines, I don't know how you usually do
> things, Your Honor, but I assume you would be addressing him instead of –
> or all of us—I don't know how you would want to do it.    I think it would
> seem most neutral, maybe if it came from you.
>
> THE COURT:    Well, I'll be the one that will have to ask it.    I'm going to
> ask him if his son [text omitted] is a friend of Michael Porter, who is known
> as Nick Fred.    And then does [Juror Number 10], himself, know Porter, and

those will be our two questions.    I guess we have to do it, but we do it at our peril, you know.    He remains the only African-American on the jury.

(ECF No. 518 at 128-29).    Because the jury had already been excused for the day, the court delayed a conversation with Juror Number 10 until the next day.

The following morning, the court met with counsel in chambers, and the Government reiterated that an inquiry would be important.    (ECF No. 520 at 135). The court wanted to be careful, however, because "[h]e's the only black on the jury, and you know, the two black defendants, and we've got to do this right."    (ECF No. 520 at 139).

Juror Number 10 was brought to the courtroom and the court told him that he had learned that one of the potential witnesses might be a friend of the juror's son. (ECF No. 520 at 140).    The court asked whether the name Michael Porter rang a bell with him.    The juror said it did not, but when the court asked about the name "Nick Fred," which was another name Michael Porter was known to use, the juror said this name was familiar.    The juror also volunteered he had seen Nick Fred at the body shop over in Springfield, and the juror had "cooked for him once, for his mother."    The juror maintained they were not personal friends.    The court inquired whether if Mr. Porter/Fred testified it would put the juror in an

uncomfortable position.   The juror said it would not, and he could evaluate the testimony just like testimony of any other witness.   (ECF No. 520 at 141).

Juror Number 10 also volunteered he recognized the nicknames of some individuals that had been the subject of testimony the previous day, although he did not know them either personally or by their given names.   (ECF No. 520 at 141). The juror said he knew of "Weeza" and "Monkey Man" and had heard what was going on with them.   The court asked whether this would cause a difficulty, and the juror said he would "actually rather not be in this position."   (ECF No. 520 at 142). The court acknowledged, "nobody likes being a juror."   (*Id.*).   The juror affirmatively stated he could "judge a case for what it's worth" and agreed his decision would be based on the evidence presented and not something he had heard on the street.   (*Id.*).   The court did not touch upon the question of sleeping during the proceedings.

After Juror Number 10 returned to the jury room, Defendant's attorney requested the opportunity to talk with his client about what had transpired to ensure Defendant did not have an objection.   (ECF No. 520 at 144).   No further discussion of this issue took place, and the proceedings continued.   Nothing shows the topic was broached again as the trial unfolded.

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

As noted above, the Eleventh Circuit affirmed Defendant's conviction after plain error review of the sleeping juror issue.   (ECF No. 654).   That court declined to reach the co-defendants' arguments that counsel was ineffective for failing to raise the issue, and stated they could "raise their arguments in a postconviction motion." (ECF No. 654 at 4).

Defendant has not shown that counsel's performance was either deficient or prejudicial.   Counsel's decision to "keep" Juror Number 10 was quite clearly based in large part on the juror being the lone African-American juror in a drug and weapons trial with two African-American defendants.   Such a strategic decision cannot be deemed unreasonable as a matter of course.   *See Ciaprazi v. Senkowski*, 151 F. App'x 62, 63-64 (2d Cir. 2005) (counsel's decision not to object to potentially sleeping juror was a strategic decision that did not constitute ineffective assistance of counsel).   Furthermore, neither the record nor Defendant suggests Juror Number 10 continued to "close his eyes," whether in concentration or due to sleeping, after the first day of trial.

Defendant also takes issue with Juror Number 10 remaining on the jury despite an acquaintance with a potential Government witness.   As noted, the juror assured the court that he did not see why his acquaintance with the witness would

affect his ability to give Porter's testimony fair weight.    (ECF No. 520 at 141).    As things turned out, Porter did not testify.

In sum, counsel's decision not to object to Juror Number 10 was not deficient. And, even if that decision could be called into question, Defendant has not made any showing of prejudice.

<u>Conclusion</u>

Defendant makes no showing of attorney performance so unreasonable that "no competent counsel" would have taken the actions, or made the choices, that his attorney made in this case.    Furthermore, Defendant has not established he was prejudiced as a result of any of counsel's actions.    Because Defendant has failed to clear the high hurdle of establishing a violation of his constitutional rights based on counsel's performance, Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

"A timely notice of appeal must be filed even if the district court issues a certificate of appealability."   Rule 11(b), Rules Governing § 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1.   That the motion to vacate, set aside, or correct sentence (ECF No. 737) be DENIED.

2.   That a certificate of appealability be DENIED.

Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK

At Pensacola, Florida, this 25th day of October, 2017.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

     **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.


Case Nos.: 5:12cr5/MW/CJK; 5:15cv52/MW/CJK